# HARTFORD LIFE INSURANCE COMPANY *v.* IBS.

## ERROR TO THE DISTRICT COURT IN AND FOR THE COUNTY OF RAMSEY, STATE OF MINNESOTA.

No. 213. Argued March 19, 1915.—Decided June 1, 1915.

To exclude from evidence a decree of the courts of the State in which an insurance company is organized adjudging the rights of the corporation as between itself and members of its mortuary fund and to refuse to enforce the provisions of such decree amounts to denying to it the full faith and credit to which it is entitled under the Federal Constitution.

Whether treated as an expectancy or as a contingent interest, the right of the wife to recover from an assessment corporation of which her husband was a member, makes her in privity with him and she is bound by the contracts which he may have entered into with the corporation in regard to the mortuary fund created under contract between the members.

While a mortuary fund made up by contributions from all members may be single, the interest of the members is common and the proper court of the jurisdiction in which the corporation managing the fund chartered has power to determine all questions relating to its internal management; and the decree of such a court in a suit brought on behalf of all similarly interested establishing the rights of members of the fund, is binding upon all members similarly interested, and must be given full faith and credit in the courts of other States in cases between the corporation and such members.

Where a common interest in a fund does exist, and it is impracticable for all concerned to be made parties, it is proper that a class suit should be brought in the proper court of the State in which the corporation managing the fund is chartered, and the decree in such a case is binding upon all the class.

Even if the suit in which a decree in another State is offered is for a different purpose than the one in which the decree was rendered, it must be given full faith and credit and is admissible, and must be regarded as conclusive, as to the right, question, or fact determined so long as it remains unmodified. *Southern Pacific Co.* v. *U. S.*, 168 U. S. 48.

121 Minnesota, 310, reversed.

THE facts, which involve the question of whether the state courts of Minnesota gave full faith and credit to a judgment of the State of Connecticut establishing the rights of an insurance company and holders of mortuary assessable certificates, are stated in the opinion.

*Mr. Frederick W. Lehmann,* with whom *Mr. James C. Jones, Mr. John M. Holmes* and *Mr. George F. Haid* were on the brief, for plaintiff in error:

The issue as to the right and propriety of maintaining a Mortuary Fund was involved in both the Connecticut and the Minnesota cases. *Southern Pacific* v. *United States,* 168 U. S. 1; *Klein* v. *Insurance Co.,* 104 U. S. 88.

The plaintiff in the Minnesota case stood as to the Connecticut case in privity with her husband, and he was by representation a party to the Connecticut case. *Smith* v. *Swormstedt,* 16 How. 288; *Wallace* v. *Adams,* 204 U. S. 415; 2 Perry on Trusts, § 885; 2 Beach on Trusts, § 498; *Scott* v. *Donald,* 165 U. S. 116.

The Connecticut court was a court of competent jurisdiction to determine the question of the right of the company to maintain the Mortuary Fund, and its decree was binding upon the company and all its members. *Condon* v. *Mutual Reserve, &c.,* 89 Maryland, 99; *Clark* v. *Mutual Reserve,* 14 App. D. C. 154; *Taylor* v. *Mutual Reserve,* 97 Virginia, 60; *State* v. *Shain,* 254 Missouri, 78.

The Minnesota court did not give full faith and credit to the judicial proceedings in Connecticut, and refused to give any effect whatever to the decree of the Connecticut court. *Nations* v. *Johnson,* 24 How. 195; *Huntington* v. *Attrill,* 146 U. S. 657; *Insurance Co.* v. *Harris,* 97 U. S. 381; *Harris* v. *Balk,* 198 U. S. 215; *Selig* v. *Hamilton,* 234 U. S. 652.

*Mr. O. E. Holman,* with whom *Mr. C. D. O'Brien* and *Mr. Edmund S. Durment,* were on the brief, for defendant in error:

The defendant in error was not a party to the Connecticut suit either of record, by privity or representation.

The defendant in error was not in privity with her husband, the insured.

The insured was not a party to the Connecticut suit by representation.

Neither the beneficiary nor the insured was bound by the Connecticut decrees; neither was served with process therein, either personal or constructive; nor did either appear.

The issues in the two actions were not the same.

The Minnesota court was at liberty to determine for itself the jurisdictional questions whether, under the general law, the defendant in error was a party to the Dresser suit and whether the issues in the two suits were the same, and was under no obligation to treat the Connecticut decrees as a bar or estoppel to this action.

The decision of the Supreme Court of Minnesota is not against the title, privilege or immunity especially set up or claimed by the plaintiff in error under the United States Constitution.

The decision of the Supreme Court of Minnesota does not impair the obligation of the contract within the meaning of Art. 1, § 10, of the United States Constitution. *Bacon* v. *Texas*, 163 U. S. 207; *Bigelow* v. *Old Dominion Copper Co.*, 225 U. S. 111; *Blount* v. *Walker*, 134 U. S. 607; *Boswell's Lessee* v. *Otis*, 9 How. 348; *Brooklyn* v. *Insurance Co.*, 9 Otto, 362; *Carey* v. *Brown*, 2 Otto, 171; *Central Bank* v. *Hume*, 128 U. S. 195; *Commercial Pub. Co.* v. *Beckwith*, 188 U. S. 567; *Condon* v. *Mutual Reserve*, 89 Maryland, 99; *Cromwell* v. *Sac County*, 4 Otto, 351; *Cross Lake Club* v. *Louisiana*, 224 U. S. 632; *Equitable Life Assurance Society* v. *Patterson*, 1 Fed. Rep. 126; *Ex parte Howard*, 9 Wall. 175; *Hart* v. *Mouton*, 80 N. W. Rep. 601; *In Re Strantz*, 27 N. E. Rep. 259; *Johnson* v. *Hartford Life Insurance Co.*, 166 Mo. App. 261; *Jurgens*

v. *New York Life Ins. Co.*, 114 California, 161; *Kerrison* v. *Stewart*, 3 Otto, 155; *Pennoyer* v. *Neff*, 5 Otto, 714; *Reynolds* v. *Stockton*, 140 U. S. 254; *Russel* v. *Place*, 4 Otto, 606; *Scott* v. *Donald*, 165 U. S. 107; *Empire* v. *Darlington*, 11 Otto, 87; *Union Central Life Ins. Co.* v. *Buxer*, 49 L. R. A. 737; *Vicksburg* v. *Henson*, 231 U. S. 259; *Wabash Ry. Co.* v. *Adelbert College*, 208 U. S. 38; *Webster* v. *Reid*, 11 How. 437; *Williams* v. *Gibbs*, 17 How. 239; 24 Am. & Eng. Ency. Law, 2nd ed. 750; 23 Cyc. 1246, 1253–1261.

MR. JUSTICE LAMAR delivered the opinion of the court.

On April 4, 1885, The Hartford Life Insurance Co. issued to Herman Ibs a certificate of membership in its Safety Fund Department which was conducted on the Mutual Assessment plan.   The certificate provided that if the policy was kept in force, by the payment of *all assessments duly levied upon all the members to create a Mortuary Fund*, his wife should be entitled to receive at his death an indemnity of $2,000 *payable out of such Mortuary Fund*.

On May 2, 1910, under Call 127, he was assessed $35.95 to meet 145 claims which matured during the quarter ending March 31.  He failed to pay and his policy was cancelled June 23, 1910.   He died June 27 and thereafter his wife brought suit in a Minnesota court against the Company.   It defended on the ground that the policy had been forfeited by reason of Ibs' failure to pay the assessment levied to meet the 145 claims.   To this the plaintiff replied that most of these claims had been paid out of the Mortuary Fund during the quarter and that the balance of cash on hand March 31 was sufficient to have paid all of the other claims.   Because of these facts she claimed the assessment of May 2 was both unnecessary and void.

In answer to this the Company insisted that the Fund was maintained as a source from which to make prompt

settlement of claims, but that such advances did not prevent the levy of the quarterly assessment which when collected was to be used in replenishing the Fund. In support of this defense it offered a certified copy of the decree of a Connecticut court, in the case of *Dresser and Other Certificate Holders* v. *Hartford Life Ins. Co.*, in which it was adjudged that the Company had the right so to maintain and use the Fund. The plaintiff objected to the admission of this decree on the ground, among others, that she was not a party to the proceeding in which it was rendered. The court sustained her objections, excluded the decree, and directed a verdict in her favor. That ruling having been affirmed by the Supreme Court of the State (121 Minnesota, 310), the case was brought here by the Insurance Company on a record which raises the sole question as to whether the Minnesota courts failed to give full faith and credit to the judicial proceedings of another State as required by Art. IV, § 1 of the Constitution.

In order to answer that question it becomes necessary to make a brief statement of the facts giving rise to the suit and to the terms of the decree—not for the purpose of determining whether the decision was correct but in order to decide whether the Connecticut court had jurisdiction to enter a decree binding on a beneficiary who was not a party to the proceeding.

The Hartford Life Insurance Company, though a stock corporation under the laws of Connecticut, had what was known as the "Safety Fund Department," conducted on the Mutual Assessment plan. The Company kept the books, levied the assessments, deposited the collections in the Mortuary Fund, and paid claims therefrom as they matured. It was not otherwise liable on the policies.

The Mutual Insurance plan contemplated the creation of a Safety Fund of $1,000,000 from membership fees. In addition to this there was to be a Mortuary Fund, raised

by graduated assessments levied on all the members for use in payment of death claims. These assessments were levied periodically and provision was made that in fixing the amount to be levied an allowance should be made "for discontinuance in membership." It so happened that the lapses were not so numerous as had been estimated and consequently each assessment realized something more than was needed to pay the matured claims. This difference, between the collections and the insurance paid, was retained in the Mortuary Fund and, in time, the "excess margins" amounted to nearly $400,000.

In 1908 the Hartford Life Insurance Company determined to discontinue the Safety Fund Department and to write no more insurance on the Assessment plan. Thereafter no new members were admitted. This change of policy was the occasion of a disagreement between the Certificate-Holders and the Company. Accordingly, Dresser and thirty other members, residing in different States, brought suit in a Connecticut court, "in their own behalf and on behalf of all others similarly situated," against the Company, its Directors and Trustees. The Bill attacked the management of the Company and, among other things, insisted that it had been and was still levying assessments too many in number and too large in amount. The Bill also alleged that the Company had recently decided to discontinue writing insurance on the Assessment plan and was endeavoring to induce members to surrender their Certificates and to take out ordinary life policies in the Company's stock department. By reason of this change of policy and the consequent decrease in membership in the Safety Fund Department and the increase in assessments the Bill alleged that the present Certificate-Holders, who had created the Mortuary Fund, were entitled to an immediate distribution of the moneys therein.

The Company's demurrer was sustained and the Bill

dismissed.  Dresser and the other certificate-holders then took the case to the Supreme Court of Connecticut where the judgment was reversed. 80 Connecticut, 681. The case having been remanded there was an answer and a hearing.  On March 23, 1910, the court made findings of law and fact, many of which are not material to the matter involved in the present litigation.  In reference to the Mortuary Fund, the trial court found that, though acting in good faith, the Company in making assessments had overestimated the number of lapses in membership and, consequently, the assessments had raised more than was needed to pay claims; that these excesses or margins had accumulated and amounted to many thousands of dollars; that these excess collections were in the Mortuary Fund and

"are now in constant use in the prompt payment of losses in advance of the receipt of the moneys to pay the same from the regular assessments, by which receipts the said Fund is constantly reimbursed.

"The plaintiffs claimed it was improper and wrongful to accumulate these margins and to carry this balance in said mortuary fund, and claimed that said balance of margins should be distributed among the outstanding certificate-holders, but it is held that it is proper and reasonable that the Company should hold such Fund for the purpose of enabling it to pay losses promptly, but it is not necessary for that purpose that the company should hold more than the amount of one average quarterly assessment for the previous year.

". . . The Mortuary Fund arising as above described or from any other source together with all income or interest thereon belongs to the Men's Division of the Safety Fund Department, and the Insurance Company is reasonably entitled to hold the same as a necessary and proper fund for the settlement of death claims on the certificates of insurance in said Department, and that any

excess above the average of the quarterly assessment for the previous year shall be distributed in diminution of assessments by crediting and applying such excess on account of the next succeeding assessment."

From other evidence in the present case it appeared that 145 members died during the quarter which ended March 31, 1910. Their certificates amounted to $323,919.95. The cash in the Mortuary Fund was sufficient to meet all of these claims and out of it $198,994.19 had been paid prior to March 31, leaving therein more than enough to settle the remaining certificates, aggregating $124,925.76, which, though accruing during the quarter, had not been finally proved on March 31.

It required at least 30 days in which to adjust claims, levy the assessment, make the calculation of the amount due by each of the more than 12,000 members and send out the proper notices. Having made the necessary calculations, the Company, on May 2, 1910, made an assessment of $323,919.95, as of March 31, 1910, with which to meet the 145 claims specified. It gave notice to Ibs that his dues and assessment to meet these 145 claims was $35.95 payable on June 5. He failed to pay and a second notice was given that unless the Company received the assessment by June 20, 1910, his policy would be forfeited. He still neglected to pay and on June 23 the Company canceled the policy. Ibs died on June 27. The widow then sued; and in answer to the Company's claim that the policy had been forfeited she contended, as already stated, that the assessment of $323,919.95 was void because $198,473.58 had, in fact, been paid out of the Mortuary Fund before March 31 and there was on that date a balance therein sufficient to pay all of the other claims included in the call.

1. But if the Mortuary Fund had been thus finally appropriated to the payment of claims—without the right of a reimbursement from the next assessment—the Fund

would have been permanently destroyed and the Company would have been deprived of the right to maintain and use it as a source from which thereafter to make prompt settlement. That the Company had such right was expressly recognized and adjudged in the Connecticut decree. To exclude it from evidence and to decline to enforce its provisions was to deny it the full faith and credit to which it was entitled under the provisions of Art. IV, § 1 of the Constitution of the United States.

2. The plaintiff insists, however, that she was not a party to the proceedings in which the decree was entered and, therefore, not bound by its terms. But in this regard she was in privity with her husband. For while, under the terms of the contract embodied in the certificate, he may not have had the right to assign the policy, or to change the beneficiary, or to lessen the amount payable at his death, yet,—whether treated as an expectancy or as a contingent interest—her right to receive an indemnity depended upon her husband being a member at the time of his death, since failure to pay the assessments would work a forfeiture. As the members were the owners of a Mortuary Fund which had been created under the terms of a plan which was, in effect, a contract between themselves, there was no reason why they and the Company might not enter into a further contract as to its present distribution or future use. If they failed in making an arrangement among themselves there was no reason why—in case of such disagreement—their conflicting claims and rights could not be determined by the judgment of a tribunal of competent jurisdiction.

3. The Fund was single, but having been made up of contributions from thousands of members their interest was common. It would have been destructive of their mutual rights in the plan of Mutual Insurance to use the Mortuary Fund in one way for claims of members residing in one State and to use it in another way as to claims of

members residing in a different State. To make advances
replenished by assessments against those living in Con-
necticut—and to make advances without the right to
replenish against those living in Wisconsin—would have
destroyed the very equality the Assessment plan was
intended to secure. Manifestly the question as to the
ownership and proper administration of the Fund could
not be left at large for collateral decision in every suit on
certificates held by those who had failed to pay the assess-
ment. For—whether the members of the "Safety Fund
Department" are regarded as occupying a position
analogous to that of shareholders; or are treated as
beneficiaries of trust property in the hands of the Com-
pany, as Trustee, in the State of Connecticut,—the courts
of that State had jurisdiction of all questions relating to
the internal management of the corporation. *Selig* v.
*Hamilton*, 234 U. S. 652; *Insurance Co.* v. *Harris*, 97 U. S.
336; *Condon* v. *Mutual Reserve*, 89 Maryland, 99; *Maguire*
v. *Mortgage Co.*, 203 Fed. Rep. 858. It was for the court
of the State where the Company was chartered and where
the Fund was maintained to say what was the character
of the members' interest—whether they were entitled to
have it distributed in cash; or used in paying the next
assessment; or retained as a Fund for the prompt settle-
ment of claims with the right and duty on the part of the
Company, as their Trustee, to replenish the same by collec-
tions from succeeding assessments. But it was impossible
for the Company to bring a suit against 12,000 members
living in different parts of the United States. It was
equally impossible for the 12,000 members to bring a suit
against the Company to determine the questions involved.
Under these circumstances Dresser and thirty other
members, holding certificates, brought suit "in their own
behalf and in behalf of all others similarly situated."

4. That allegation, of course, would not by itself deter-
mine the character of the proceeding (*Wabash Railroad* v.

*Adelbert College,* 208 U. S. 58). For, in order that the decree should be binding upon those certificate-holders who were not actually parties to the proceeding, it had to appear that Dresser and the other complainants had an interest that was, in fact, similar to that of the other members of the class, and that it was impracticable for all concerned to be made parties. But, when such common interest in fact did exist, it was proper that a Class suit should be brought in a court of the State where the Company was chartered and where the Mortuary Fund was kept. The decree in such a suit, brought by the Company against some members, as representatives of all, or brought against the Company by 30 certificate-holders for "the benefit of themselves and all others similarly situated," would be binding upon all other certificate-holders.

"Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained." *Smith* v. *Swormstedt,* 16 How. 303. See also *Hawkins* v. *Glenn,* 131 U. S. 330; *Bealls* v. *Illinois R. R.,* 133 U. S. 290; *Kerrison* v. *Stewart,* 93 U. S. 155; *Supreme Council of Royal Arcanum* v. *Green,* this day decided, *ante,* p. 531. The principle is recognized both in England and in this country. 1 Pomeroy Eq. Jur. (3d ed.), §§ 267, 268. In *Corey* v. *Sherman,* 96 Iowa, 114, and

*Carlton* v. *Southern Mutual Ins. Co.*, 72 Georgia, 371 (2); 379 (5–10), the rule was applied in cases involving the rights of those interested in mutual insurance funds raised by collections from many policy-holders.

5. It is said, however, that even if the decree, determining the status and use to be made of the Mortuary Fund, was binding upon members and beneficiaries, it could not be offered in evidence in a suit on a policy of insurance, since the cause of action and the thing adjudged in the two cases was different—one involving the status of the Fund and the rights of members therein while the present case related to the right of a beneficiary to recover on a policy and the power of the Company to declare a forfeiture. But the defendant's contention that the policy had lapsed, because of the failure of Ibs to pay the assessment, and the plaintiff's reply that the assessment was void because the Mortuary Fund was sufficient to meet Call 127, raised an issue as to the right of the Insurance Company to levy the assessment. On that issue the Connecticut decree was admissible, since it adjudged that the Company had the right to make advances to pay claims and could subsequently collect the amount of such claims by an assessment levied as in the present case. Its right so to do having been determined by a court of competent jurisdiction, the decree was binding between the parties or their privies in any subsequent case in which the same right was directly or collaterally involved. For *" even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."* *Southern Pacific Co.* v. *United States*, 168 U. S. 48–49. So also it was held in *Forsyth* v. *Hammond* (166 U. S. 518), that "though the form and causes of action be different, a decision by a court of competent jurisdiction in respect to any essential fact or question in the one

action is conclusive between the parties in all subsequent actions."

There are other questions in the case which present no Federal question, but for error in refusing to admit the decree of the Connecticut court the judgment is

*Reversed.*