**PURCELL et al. v. SUMMERS et al.**

No. 328.

District Court, E. D. South Carolina, Columbia Division.

July 25, 1940.

Henry R. Sims, of Orangeburg, S. C., R. T. Jaynes, of Walhalla, S. C., R. E. Babb, of Laurens, S. C., Walter McElreath, of Atlanta, Ga., Orville A. Park, of Ma-con, Ga., and J. Morgan Stevens, of Jackson, Miss., for plaintiffs.

Collins Denny, Jr., of Richmond, Va., and C. T. Graydon, of Columbia, S. C., for defendants.

LUMPKIN, District Judge.

This action was begun in this court on the 1st day of June, 1940.

The suit is brought by eight Bishops of the unified "The Methodist Church, an unincorporated Society, on behalf of themselves, and all of the members of said Church, and officially as Bishops of said Church representing themselves and all other members of said Church as a class", all of said Bishops being citizens of a State other than the State of South Carolina.

The defendants are all citizens of South Carolina and are made parties defendant "individually and as officers and members of an unincorporated Society, holding itself out to be the 'South Carolina Conference of The Methodist Episcopal Church, South', and as representing all other persons similarly situated, all residing in the State of South Carolina."

The plaintiffs set up three grounds for relief:

First: A declaratory judgment finding that there has been a legal and valid union of the Methodist Episcopal Church (hereafter called the Northern Church), the Methodist Episcopal Church, South (hereinafter called the Southern Church), and the Methodist Protestant Church (hereinafter called Protestant Church), into the unified organization known as "The Methodist Church"; and further for a declaratory judgment finding that the unified Church (The Methodist Church) has legally succeeded to all the properties and rights of the Southern Church, including the exclusive right to use the name Methodist Episcopal Church, South.

Second: It is prayed that a preliminary and permanent injunction do issue, restraining the defendants and all others in like position from using the name "Methodist Episcopal Church, South", or any name similar to that name, or any contraction of that name, or any synonym thereof, as to the name of any church, religious society or other organization existing, or which may be organized or exist independent of "The Methodist Church".

Third: The third paragraph of the prayer is almost identical with the second

paragraph of the prayer and asks for the same relief.

The complaint and the answer filed herein are not in keeping with the requirements of the New Federal Rules of Procedure, 28 U.S.C.A. following section 723c, which require a short and succinct statement of points relied on in each pleading. Rule 8(a). The complaint contains thirty-nine (39) paragraphs and the original answer as filed contains forty (40) paragraphs.

When the matter first came up on motion for preliminary injunction the status of the pleadings was at once discussed but the Court was convinced in this particular case and of its importance to Methodists throughout the world that an historical review of plaintiff's claims was almost necessary in the complaint, and equally it was necessary for the defendants to review at length their objections to the claims of the plaintiffs. It has really been of aid to the Court instead of a hindrance as is usually to be expected from lengthy pleadings.

This Court is not unmindful of the vast importance of the issues raised in this proceeding; the plaintiffs want this Court to declare that the unified Church (the Methodist Church) has absolutely become the legal successors to all the properties and rights formerly held by the Northern Church, the Southern Church and the Protestant Church.

They allege the net value of the property owned exceeds $656,000,000. That it has permanent funds of over $14,000,000, and annuity funds of over $7,000,000. That its current asking for Foreign Missions is over $3,900,000 and for Home Missions over $2,500,000. That in the last twelve months it raised for ministerial support, debt payment, current expenses, etc., exceeding $80,500,000. That there is a membership of approximately 7,800,000 members, with 139 educational institutions, 83 hospitals, 40 homes for deaconesses, and other properties throughout the world; and this Court is asked to declare that these properties are vested in the unified Church (the Methodist Church), or in one of the many corporate entities said to be a part thereof.

This is a burden which has weighed heavily upon the Court and constant thought and study has been given the case since the hearing on jurisdictional question was had on July 10th last.

The defendants come into court and deny all of the claims of the plaintiffs and allege that the attempted unification was null, void and of no effect, certainly as to these dissenting defendant members, and also that it was illegal as to the whole Southern Church; and further allege in the answer and on motion in open court that the Court has no jurisdiction over the subject matter and moved to dismiss the complaint on the following grounds:

(a) That there is no right of property involved and the only issue is one of an ecclesiastical nature and unless property rights are combined therewith this Court should not decide a strictly ecclesiastical question, and therefore the necessary jurisdictional amount of $3,000 is not present in the controversy.

(b) That there is no diversity of citizenship and a class suit cannot be maintained by the plaintiffs as Bishops as they are not truly representative of the great mass of the membership.

(c) That there are pending in the state courts of South Carolina eight (8) or more class suits brought by members of the unified Church (the Methodist Church) against persons who have refused to turn over properties such as churches and ministers' residences to the new ministers appointed by the Bishops of the unified Church (the Methodist Church), and where deeds have actually been made as set forth in the complaint and answer herein from certain trustees claiming to act for the local churches in South Carolina to a new group of trustees for the benefit of the present and future members of such local Methodist Episcopal Church, South, and that because of such pending suits the property in question in the State of South Carolina has been taken possession of by the state courts, is under its jurisdiction, subject to its process, and that the United States District Court cannot now in the present proceeding take possession of the same property and attempt to adjudicate the rights and interests of the parties in this proceeding to the same property involved in the state proceedings.

When it appeared on the first hearing of this matter on June 25th last that a jurisdictional question had been raised it

seemed apparent to the Court that for the benefit of all concerned this question should be disposed of at the earliest possible date. Accordingly the Court set July 10th for the beginning of this hearing and for the parties to make such amendments to the pleadings as they might see fit to propose.

If the Court has no jurisdiction parties to this litigation should not be required to go through a very lengthy trial on the merits, and so it was deemed most important to first determine whether this court had jurisdiction.

From lengthy oral arguments presented and the very full and complete written briefs submitted by counsel in the case, I have concluded that this Court is without jurisdiction to hear and determine this matter.

The Court, as more fully hereinafter stated, bases its conclusions entirely on the fact that the state courts of South Carolina in eight (8) separate proceedings, all class actions, have taken possession of the res, which is in part the subject matter of the present suit, and it would be most improper and in violation of principles of law established over one hundred years in this country for two courts of equal jurisdiction to attempt to take charge of and adjudicate rights in property at the same time over the same thing. This is not a matter of comity entirely, but is based on well settled principles of law which should be and must be sustained, for indeed it would be a sad and unhappy event for the state court to make an adjudication with reference to property and hand its mandate to the sheriff of the county, and for the federal court to take an opposite view and hand its mandate to the marshal of the court, and let these two officers of different courts meet upon the property to carry out if necessary their judgments by force. Such a condition should never be permitted to arise in this country, and such has been the opinion of the state and federal courts since their origin.

■ *Amount in Controversy.* The defendants claim that this Court is asked to pass upon a pure question of ecclesiastical law and that no property rights are involved. And, unless property rights are involved, civil courts have no jurisdiction to pass upon the purely ecclesiastical issues. I think the counsel is eminently correct in taking this position, for as far

back as the case of Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666, it was held that the civil courts could not look behind a decision of the judicial council of the Southern Church, but would have to accept the decision of that council on the meaning of the governmental (as distinguished from doctrinal) rules and regulations of the Church. But the issues arising in that decision of long ago are not found here. The question is, what is the value of the rights which the plaintiffs seek to protect? Does this involve the right in property of a value over $3,-000? It seems to the Court that without doubt the value of the several rights involved here involve literally millions of dollars in property, in monthly collections and disbursements, in the operation of a great organization in almost every country throughout the civilized and uncivilized world, and to deny that the jurisdictional amount in controversy is present would be to overlook the allegations of the verified complaint and the many affidavits submitted showing that the value of all the church property throughout the world exceeds $650,000,000.

Even if this issue were limited only to a valuation of the properties located in South Carolina, it is shown by the verified amended complaint filed herein that the actions now pending in the state courts in class suits heretofore filed involve the property of eight (8) different churches located at Florence, Clinton, Springfield, Turbeville, Timmonsville, Leo, Ridgefield and Fork, South Carolina, at a total value exceeding $50,000. The properties involved in these suits have been deeded away, so it is alleged, to trustees other than those recognized by the unified Church (the Methodist Church), and consequently this suit seeks to re-vest and to quiet the title in the trustees of the unified Church (the Methodist Church).

In injunction proceedings and in proceedings of a mixed nature similar to this proceeding, it becomes necessary to determine whether the required jurisdictional amount in controversy is present. But certain well-established principles have now become embedded in our law which must be followed in seeking the answer to that question.

■ These established principles are two in number: First: The right which the plaintiff seeks to protect is the matter in

controversy; second, the right which it is sought to protect must be a right of property, and it must be such that it has a value which can be proved and calculated in the ordinary mode of a business transaction.

The courts have reached that determination only through laborious process, and in effect they have had to overrule certain earlier cases, and particularly what is frequently spoken of as the leading case of Mississippi & M. R. Co. v. Ward, 2 Black 485, 492, 17 L.Ed. 311. In that case a bill was filed praying for abatement of a bridge across the Mississippi River, averring it to be a public nuisance, specially injurious to the plaintiff as an owner and navigator of steamboats. The Court, through Mr. Justice Catron, gave expression to the following frequently quoted sentence with which it disposed of the question of jurisdiction: "But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern."

Thus the Court did not give effect to what Judge Dobie in his very excellent book on Federal procedure terms "the plaintiff-viewpoint rule". See Dobie on Federal Procedure, p. 133 et seq. From the plaintiff's viewpoint the right which he was seeking to establish was his right to navigate the river unencumbered by the obstruction, and that was the right in controversy.

It is believed that subsequent and more recent decisions have, however, established the principle that the matter in dispute is the right the plaintiff seeks to protect.

In Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 534, 51 L.Ed. 821, the Cotton Exchange filed a suit to enjoin Hunt from receiving, using or selling the quotations of the Exchange without its consent or approval. Hunt contended that the amount in controversy was the cost to him of obtaining the quotations, but the Court said that the object of the suit was to protect the property right of the Exchange in its quotations, and "The right, therefore, is the matter in dispute, and its value to the exchange determines the jurisdiction, not the rate paid by appellant to the telegraph company."

In Bitterman v. Louisville & N. R. Co., 207 U.S. 205, 28 S.Ct. 91, 98, 52 L.Ed. 171, 12 Ann.Cas. 693, the railroad company sought to enjoin ticket brokers from dealing in non-transferable round-trip tickets issued at reduced rates. The Court, speaking through Mr. Justice White, said that jurisdiction was to be tested "* *' * not by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business to be protected and the rights of property which the complainant sought to have recognized and enforced."

In Glenwood Light & Water Co. v. Mutual, etc., Co., 239 U.S. 121, 36 S.Ct. 30, 32, 60 L.Ed. 174, the plaintiff sought to restrain the defendant from erecting poles and wires in such manner as injured the plaintiff's poles, wires and business. The District Court held that the jurisdictional amount was fixed by the cost to the defendant of removing its poles and wires where they interfered with those of the plaintiff and of replacing its poles and wires in such position as would avoid conflict and interference. The Supreme Court held that in this determination the District Court had erred, and that the right which the plaintiff sought to protect was to conduct its business free from wrongful interference by the defendant, and the Court added: "The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction."

The value of the right sought to be protected here is easily to be arrived at. We have quoted the figures above without attempting to go into detail and regardless of the property in South Carolina when it is recorded under oath in this proceeding that over 7,800,000 people as alleged members of the unified Church in addition to owning property mentioned have permanent funds of over $20,000,000 and annual collections for expenses of over $80,000,000, this Court must unhesitatingly hold that the amount in controversy is present.

*Diversity of Citizenship—Class Suits.* Here the defendants deny that the plaintiffs as eight (8) duly appointed and ordained Bishops of the unified Church (The Methodist Church) have a right to bring this suit. These Bishops, as the Court understands it, were formerly Bishops of the Southern Church and after the alleged unification became Bishops of the unified Church.

Defendants say that the complaint does not present a proper showing for a class suit, that the plaintiffs are not typical of and do not have rights similar to the class

or classes of persons in whose behalf they purport to file this proceeding. The defendants are not typical of and do not possess rights similar to the classes of persons who would be affected and whose rights would be drawn into question should it be otherwise considered proper to enter a decree in accordance with the prayer of the complaint. This position in the opinion of the Court is not tenable.

In this hearing a vast amount of testimony has been submitted in the nature of affidavits and in using depositions taken in some of the state court cases. There has been submitted the rules, regulations and discipline of the Southern Church, and of the unified Church, but all of this evidence is of very little help in passing upon the questions of diversity of citizenship and of class suits. The defendants say that the plaintiffs as Bishops constitute a "separate class peculiar to themselves." That there are classes of members and all are not of the same type or degree. That the rights, privileges and duties, both legal and ecclesiastical, of each class differ from those of the other classes, and that "the plaintiffs * * * constitute within the Methodist Church a group peculiar unto themselves * * * and the other members * * * are possessed of substantial rights, privileges, and duties not possessed by these * * *" Bishops who are plaintiffs in this case.

Without reviewing in detail all of the reasons which would permit this Court to hold that diversity of citizenship is present and that this is a proper class action, it is alleged in paragraph 37 of the complaint that the unifying Conference of the three Churches above referred to at the time of the alleged unification passed the following resolution: "Resolved: That we authorize the Bishops of a Jurisdictional Conference within which a suit or suits may be brought, if in their judgment it is proper to do so, to employ competent attorneys to protect the interests of The Methodist Church, local or general, in such property, or to cause such suit or suits to be brought as may in their judgment be necessary to protect the interest of The Methodist Church * * *".

A class action appropriately brought does not of necessity require the action of some supreme body which apparently is entitled by its resolutions and duly adopted motions to guide and carry on the work of a church such as the alleged unified Church (the Methodist Church) whose legal status is largely the subject matter of this controversy. But here we have a direct, definite resolution of the Supreme Body authorizing the Bishops of this jurisdiction to bring this action if in their judgment it seemed appropriate and proper, and then in the ensuing paragraph, No. 38 of the complaint, it is alleged that these Bishops had a meeting on the 10th day of April, 1940, and passed a resolution authorizing this suit to be filed. Where could there be a more representative or class action found to exist? In one of the earliest cases, which it is interesting to note grew out of the division of the old Methodist Church in 1844 when the Southern Church was formed, the Supreme Court of the United States in Smith et al. v. Swormstedt et al., 16 How. 288, 302, 14 L.Ed. 942, quoting from Mr. Justice Story, held as follows:

"Mr. Justice Story, in his valuable treaty on Equity Pleadings, after discussing this subject with his usual research and fulness, arranges the exceptions to the general rule, as follows: 1. Where the question is one of a common or general interest, and one or more sue or defend for the benefit of the whole. 2. Where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole; and 3. Where the parties are very numerous, and though they have or may have separate and distinct interests, yet it is impracticable to bring them all before the court.

"In this latter class, though the rights of the several persons may be separate and distinct, yet there must be a common interest or a common right, which the bill seeks to establish or enforce. As an illustration, bills have been permitted to be brought by the lord of a manor against some of the tenants, and vice versa, by some of the tenants in behalf of themselves and the other tenants, to establish some right—such as suit to a mill, or right of common, or to cut turf. So by a parson of a parish against some of the parishioners to establish a general right to tithes— or conversely, by some of the parishioners in behalf of all to establish a parochial modus.

"In all cases where exceptions to the general rule are allowed, and a few are permitted to sue and defend on behalf of the many, by representation, care must be taken that persons are brought on the record fairly representing the interest or right

involved, so that it may be fully and honestly tried.

"Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court.

"The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

Each of the three elements mentioned above by Mr. Justice Story approved by the Supreme Court of the United States are present in this case. The question here is:

(1) One of common or general interest.

(2) Undoubtedly this, the Methodist Church, is a voluntary unincorporated association, and it is not only to be presumed that the plaintiffs represent the rights and interests of the alleged unified Conference, but by a definite resolution the Bishops here were directed to bring this suit.

(3) The parties are more numerous it would seem to the Court than in any other suit ever brought into litigation in this country, for over seven million people, it is alleged in the verified complaint, are members.

The device of the representative suit is recognized as the procedurally correct method of determining and defining the rights of the parties in suits of this character.

There is a series of cases which illustrate to a marked degree the binding effect of decrees in such representative suits. The series of cases that the Court refers to have to do with the affairs of the Hartford Life Insurance Company. The leading case is Hartford Life Ins. Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 695, 59 L.Ed. 1165, L.R.A. 1916A, 765. It seems that there was a department of the Hartford Life Insurance Company known as the Safety Fund. It decided to abandon the insurance covered by this Safety Fund, whereupon thirty-one certificate holders brought a representative suit in the courts of Connecticut in behalf of themselves and all other certificate holders seeking an injunction against the contemplated acts of the insurance company. The Supreme Court of Connecticut, Dresser v. Hartford Life Ins. Co., 80 Conn. 681, 70 A. 39, held that the insurance company could not abandon this insurance, but authorized the lower court to enter a decree in accordance with the equitable rights of the parties, whereupon the lower court entered a decree, the effect of which was to increase the assessments of the certificate holders. A man living in Minnesota who held one of these certificates died, but shortly prior to his death he had defaulted in the payment of an assessment authorized by the Connecticut decree. His widow brought suit against the insurance company and contended that neither she nor her husband was bound by the Connecticut decree since neither he nor she had been a party to the suit. This case went to the United States Supreme Court and it was held there that the decree in the representative suit did bind Mrs. Ibs and her husband. There was also a policy holder who lived in Missouri who failed to pay the assessment levied pursuant to the decree, and when the beneficiary of his policy brought suit a similar contention was made, but the Supreme Court of the United States again held that the decree in the Connecticut representative suit was binding upon all of the policyholders.

The Court commenting upon the original class suit in Connecticut and its binding effect upon all other policyholders, said: "But it was impossible for the company to bring a suit against 12,000 members living in different parts of the United States. It was equally impossible for the 12,000 members to bring a suit against the company to determine the questions involved. Under these circumstances Dresser and thirty other members, holding certificates, brought suit 'in their own behalf and in behalf of all others similarly situated.' * * * But, when such common interest in fact did exist, it was proper that a class suit should be brought in a court of the state where the company was chartered and where the mortuary fund was kept. The decree in such a suit, brought by the company against some members, as representatives of all, or brought against the company by thirty certificate holders for 'the benefit of them-

selves and all others similarly situated,' would be binding upon all other certificate holders."

The case which came up from Missouri and which involved the same class suit as that which the case just cited involved was Hartford Life Ins. Co. v. Barber, 245 U.S. 146, 38 S.Ct. 54, 55, 62 L.Ed. 208. This suit involved certificates of insurance which the insurance company claimed and lapsed because of the non-payment of assessments levied in accordance with the decree in the Connecticut court in the class suit which is above referred to. At the trial the Connecticut judgment was offered in evidence and excluded, and the jury was instructed that the defendant must prove that the assessment in question was made by the directors of the company. This instruction was in the teeth of the Connecticut adjudication. The plaintiff recovered judgment in the court below and the matter finally found its way to the Supreme Court of the United States. The court called attention to the fact that the transactions involved in this case were of the kind before the court in the Ibs case, supra, held that the Connecticut judgment should have been admitted in evidence and should have been followed, and then concluded the opinion by saying, "we are of opinion that full faith and credit was not given to the Connecticut record and that for that reason the present judgments must be reversed."

Here it will be noted that although the suit was brought in a state court in Connecticut, it was held to be a class suit, was set up as a bar in Minnesota and in Missouri in the Ibs and Barber cases, supra, and the Supreme Court of the United States held that the citizens of Minnesota and of Missouri were bound by the adjudication in the state court of Connecticut.

■ Here, therefore, it would seem most appropriate to approve this action as a class suit in which the plaintiffs are not only presumed to be but by virtue of the evidence presented they "represented the rights and interests of the whole". To say that the Bishops are not still members of their Church solely because of their standing and character and ability they had been raised to the exalted office of Bishop would deny to them probably the highest and most cherished memory and recollection of their career, the day they first decided to join the Church which later through a pledge of life long service to their Maker elevated them to the most sacred place in the world-wide effort of Methodism.

From the foregoing the Court makes it clear that so far as the amount in controversy and diversity of citizenship are concerned this Court has jurisdiction.

*Right to A Declaratory Judgment.* The fundamental issue in this case is whether the union of the three Methodist bodies was and is legal. If this case were ever tried on its merits and it was determined that the attempted union was illegal, then the Court by appropriate orders would have to disentangle the millions of dollars of property which has been brought under one government in the unified Church (the Methodist Church). The rights, duties and obligations of the parties ultimately will depend upon a decision of the legality of the attempted union. Property rights necessarily depend upon it. The issues are actual, indeed acrimonious. The bill alleges and the answer admits that alienation deeds have been executed of various church properties located in South Carolina and within the confines of this Federal District. The bill charges and the answer admits that those opposed to union organized into a layman's organization for the alleged purpose of claiming to be the successor of the Methodist Episcopal Church, South, and issued a paper advocating their views.

All of this has led to the organization or creation of the so-called South Carolina Conference of the Methodist Episcopal Church, South, by those objecting to the union. Plaintiffs, as representative of the united Church, contend that the union was legally and constitutionally effected. The dissidents deny this and refuse to accept the action of the constituted authorities of the Church and the decisions of the highest Church judicatories.

■ Under the decision reached by this Court the merits cannot be passed on but it is only fair to the parties for this Court to declare, and it so finds, that but for the pendency of other class suits in the state courts this case would be ideal for invoking the right to a declaratory judgment under the Act of Congress. There could hardly be a more real controversy between vast numbers of citizens of this country than is to be found in this case.

Mr. Chief Justice Hughes, in Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R.

1000, splendidly analyzes the Declaratory Judgment Act of 1934 and holds: "A 'controversy' in this sense must be one that is appropriate for judicial determination. Osborn v. Bank of United States, 9 Wheat. 738, 819, 6 L.Ed. 204 [223]. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S. S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 [809]. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring Hill Gold Min. Co. v. Amador Medean Gold Co., 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712; Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499 [504]; Massachusetts v. Mellon, 262 U.S. 447, 487, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. See Muskrat v. United States [219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246], supra; Texas v. Interstate Commerce Commission, 258 U.S. 158, 162, 42 S.Ct. 261, 262, 66 L.Ed. 531 [537] * * *. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. Nashville, C. & St. L. R. Co. v. Wallace, supra, 288 U.S. 249, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191; Tutun v. United States, 270 U. S. 568, 576, 577, 46 S. Ct. 425, 426, 70 L.Ed. 738; Fidelity Nat. Bank & T. Co. v. Swope, 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959 [964]; Old Colony Trust Co. v. Commissioner [of Internal Revenue], supra, 279 U.S. 716, at page 725, 49 S.Ct. 499, 502, 73 L.Ed. 918 [926]. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. Nashville, C. & St. L. R. Co. v. Wallace, supra, 288 U.S. 249, at page 264, 53 S.Ct. 345, 348, 77 L.Ed. 730 [736], 87 A.L.R. 1191."

It seems to the Court that not only this proceeding but the proceedings referred to in the state courts of South Carolina are real and substantial controversies requiring specific relief "through a decree of a conclusive character."

Because as hereinbelow stated the matters having been first presented to the state court, this Court should not now take jurisdiction, but if it had jurisdiction this is a controversy which should be determined under the Declaratory Judgment Act of Congress, Jud.Code § 274d, 28 U.S.C.A. § 400.

*State Court has Taken Possession of the Res.* This is the ground on which this Court must dismiss the complaint for want of jurisdiction. The issues in the instant proceeding have been analyzed above and clearly this is a class or representative action for relief affecting certain properties in South Carolina and to declare the attempted unification void and of no legal effect, and for further relief.

In the pleadings as submitted it is shown that eight (8) suits have been begun concerning properties which have been conveyed to new trustees for the benefit of local churches located at Florence, Clinton, Springfield, Turbeville, Timmonsville, Leo, Ridgefield and Fork, South Carolina, and it is admitted that suits have been begun in the State court on behalf of the unified Church or the membership thereof in class actions seeking to set aside the attempted conveyance of these properties. It is admitted that all of these suits are virtually alike, and the so-called Turbeville Case,— Dan E. Turbeville, et al. v. M. J. Morris, et al,—Common Pleas Court, Clarendon County, South Carolina, is offered to the Court as typical of all other complaints brought in the state courts of South Carolina. The caption of the complaint is:

"Dan E. Turbeville and D. L. Green, individually and as Trustees of Pine Grove Methodist Church at Turbeville, South Carolina, E. L. Green, individually and as Trustee and Steward of said Methodist Church, E. R. Morris, M. L. Dennis and D Ed Turbeville, individually and as Stewards of said Methodist Church and John L. Green, a member of said Methodist Church individually, all on behalf of themselves and other members of The Methodist Church formerly the Methodist Episcopal Church, South; Reverend C. C. Derrick as District Superintendent of Kingstree District of the South Carolina Conference of The Methodist Church and Reverend L. D. B. Williams, Pastor and/or Preacher in

Charge of Pine Grove Methodist Church at Turbeville, South Carolina, Plaintiffs v. M. J. Morris, A. N. Coker, E. N. Green, H. W. Cole, F. B. Thomas and W. L. Coker, individually and as members or former members of Pine Grove Methodist Church at Turbeville, South Carolina, in their own right and as representing all other members similarly situated, Defendants".

The defendants admittedly in these state court cases are the dissidents, or persons who have refused to join in the unified Church (the Methodist Church) and who have attempted to take possession of the Church properties at the places mentioned above, claiming the same as a matter of legal right for the local churches.

In each of the State cases an order has been obtained from a State Court Common Pleas Judge by way of temporary injunction and providing that the defendants and "all persons similarly situated, be and they hereby are, pending this action and till final judgment is rendered herein, enjoined and restrained from interfering in any way or manner as alleged in the complaint with the use of. the premises described in the complaint by the plaintiffs and those on whose behalf this action is brought."

The allegations of the complaints while not as full and complete are almost identical with the complaint presently before the Court. The prayer is virtually the same in all complaints, and in the state court the prayer of the complaint reads as follows:

"(1). That it be adjudged that The Methodist Church exist in continuity with and as the successor of the Methodist Episcopal Church, South, and as such owns and is entitled to the use and possession of the property described in this complaint;

"(2). That the deed referred to in paragraph 10 be declared null and void and of no force and effect and that the same be delivered to the Clerk of this Court and by him cancelled of record;

"(3). That the defendants be permanently enjoined and restrained from interfering with the use of the property herein described by the plaintiffs and others in like situation;

"(4). That it be adjudged that to The Methodist Church now belongs the legal title to the name—the Methodist Episcopal Church, South, and that the defendants and all persons in like situation be en-

joined from the use of said name or any other name of like import;

"(5). That the plaintiffs have judgment for the costs and disbursements of this action and for such other and further relief as may be just and equitable."

Here it is shown in the amended complaint that there are nine (9) other churches or locations in South Carolina where deeds have been made "attempting to vest title in trustees, to hold said properties for the use of a church styling itself the Methodist Episcopal Church, South, independent of The Methodist Church" and that suits have or will be begun in the state courts to set aside these deeds.

▮ Under the well established rule of law obtaining in this country since the creation of our courts, it would, nothing else appearing, be unseemly for this Court to attempt to take possession of these properties when the state court has already taken possession of the res. Without analyzing the vast number of decisions it is only necessary to refer to Kline v. Burke Construction Co., 260 U.S. 226, beginning at page 229, 43 S.Ct. 79, at page 81, 67 L.Ed. 226, 24 A.L.R. 1077:

"It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in. a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.

"This court in Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 358 (28 L.Ed. 390), said:

"'The forbearance which courts of coordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no

higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues.' "

So this Court cannot even exercise a discretion in the matter, for this question involves a principle "of right and of law, and therefore, of necessity". .

This is not a suit for a personal judgment, nor even does it involve a personal liability. If it were such it would not impair the jurisdiction of the Federal Court, for the Court under such circumstances would be free to proceed in its own way to render judgment, and if perchance the Federal Court rendered judgment first such could be set up in a personal liability action as res adjudicata in the state court, but this action involves a thing, and quoting from the Kline case, 260 U.S. page 231, 43 S.Ct. page 82, 67 L.Ed 226, 24 A.L.R. 1077: "It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature."

A situation like this must not be allowed to involve the question of judicial supremacy, for it is clear that both courts "can-

not possess or control the same thing at the same time".

A decision in the class actions pending in the state courts of South Carolina would bind parties everywhere. The Supreme Court of this State has so decided in Faber v. Faber, 76 S.C. 156, 56 S.E. 677, where Smith v. Swormstedt, supra, from the Supreme Court of the United States was distinctly adopted and approved. The Supreme Court of the United States has clearly held that the state court decision in Connecticut in the Ibs and Barber cases, supra, was binding upon citizens of Minnesota and Missouri. So a final adjudication of all the issues can be definitely and finally determined in the present proceedings in the state courts of South Carolina.

It is, therefore, clear that the state court having obtained jurisdiction of the res, having issued its order of injunction, having before it the parties in a clear representative or class action, has a right to render its judgment, and this Court has no power or right to take jurisdiction of a similar case.

To all intents and purposes the parties, the properties, the rights, and liabilities involved are the same and in deference to this long established rule of law as well as of comity it is encumbent on this Court to dismiss the complaint herein. And it is so ordered.