## BATTLES v. BRANIFF AIRWAYS, Inc.
### No. 11063.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1944.

Rehearing Denied Feb. 6, 1945.

Marion B. Solomon, of Dallas, Tex., for appellant.

Lucian Touchstone and Allen Wight, both of Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

As receiver of an insolvent reciprocal insurance association, Battles brought this suit on two claims. One was for unpaid premiums. The other was on a judgment entered in an assessment suit brought against named subscribers other than Braniff, individually and as representatives of a class. The defenses to the claim for unpaid premiums were (1) that the policy sued on had been issued under an agreement for no liability for premiums beyond the $100 paid at issuance, and (2) that the statute of limitations of four years had barred the claim.

The suit on the judgment was defended on the grounds (1) that defendant was not a party to the suit by representation but

was in fact excluded from the suit, and (2) that if it was a party, its relation to the association was such, and so different from that of the named defendants, that it was not, and could not have been, truly represented by them so as to afford that protection to absent parties which due process requires. Tried to the court without a jury, it was established without dispute: that defendant and the association had agreed, as defendant contended they had, that a policy would be issued to defendant upon the payment of a fixed premium of $100, and upon the understanding that defendant would not be liable for premiums and the association would not be liable for losses; that the association would issue what is spoken of in the briefs as a "fronting" policy, putting the defendant in compliance with the Workmen's Compensation Law of Texas, Vernon's Ann. Civ.St.Tex. art. 8306 et seq., but defendant would save and protect the association from liability under it by having the risk underwritten in Lloyds of London; that this agreement was carried out, a workmen's compensation policy was issued to defendant effective for one year from June 4, 1937, to June 4, 1938, Lloyd's insurance was obtained, and all loss claims established against Casualty Underwriters under the policy were settled for by Lloyds.

The suit for unpaid premiums was filed October 5, 1943. The assessment suit was brought to judgment April 22, 1941, reciting: That the suit was a class suit; that the subscribers named as defendants would, and did, properly represent the other subscribers; and generally that all subscribers during the period from January, 1937, to August 11, 1938, were liable to assessment. The judgment contained the finding that, the named defendants and all other subscribers at Casualty Underwriters during the period from January, 1937, to August 11, 1938, were truly represented by the defendants named therein and also by those defendants answering therein, and that all subscribers and policyholders at Casualty Underwriters during the period in question were bound by that judgment. Notwithstanding this language of general import, however, it was specifically found that there was offered in evidence, and that there is attached to the judgment, a list of the subscribers, 6,508 in number, and the judgment declares: "The Court finds that Exhibit 24, introduced in evidence herein, correctly reflects the total amount of the premiums booked and earned on each policy or policies carried by the subscribers therein listed at the Casualty Underwriters during the period in question, and the sum of money set opposite the name * * * of said subscribers is the aggregate amount of premiums earned * * * during any part of all of the aforesaid period from January 1, 1937 to August 11, 1938, incl." The judgment then goes on to find: That the claims and liabilities amount to the sum of $291,684.64; that the reasonable value of the assets in the hands of the receiver is $25,000; that the expenses for further administration are $150,000; that the total of claims and expenses leaves a deficit of $416,686; that the aggregate of all premiums booked and determined amounts to $1,193,401.17; that by reason of insolvency of the members of the association, 42 percent of the assessment levied by the court is uncollectible; that by calculation it requires 60 percent of the above amount of booked and earned premiums to make up the figure of $416,686.64, and therefore, each and every subscriber during such period of time is bound and liable to pay to the plaintiff 60 percent of the premium booked and earned on each insurance policy; that the amount of premiums earned and booked on the policy or policies held by each subscriber during that period is the sum of money appearing opposite the name, trade name or firm name of said subscriber in Exhibit 24, introduced in evidence in this cause; that same is made a part of the judgment as if incorporated in it; and that plaintiff is here awarded judgment against said subscribers for an assessment of 60 percent of the sum of money appearing opposite the name, trade name or firm name of said subscribers in said Exhibit 24. Finally it was ordered: that "any and all relief whatsoever sought by the plaintiff herein or by any defendant or defendants, where not expressly granted is refused and no recovery herein shall be had except that hereinabove expressly decreed".

The District Judge agreed with defendant both that it had never been liable except for the $100 it had paid and that if the association had ever had a cause of action, it was barred. He agreed with it too that defendant was not a party to, or bound by, the judgment sued on, and that, therefore, plaintiff's suit failed as to both claims, and he gave judgment accordingly.

Here, upon the claim for premiums, appellant urges upon us that the attempt to

import into the contract, evidenced by the policy, an agreement to pay less than the premiums fixed by law, rendered the agreement illegal and void. To appellee's position that, the illegality of the agreement conceded, plaintiff, being in pari delicto with defendant, could not sue on a contract so tainted,[1] appellant replied: first, that the parol agreement is ineffective because it not only departs from and varies the policy, but overrides the statute;[2] second, that he is not in pari delicto, because, a receiver, he represents not merely the company but its creditors;[3] and, third, that he is not suing on the agreement but on the policy, that it is not he but the defendant who seeks to allege the illegal agreement, therefore, the doctrine appellee invokes does not apply.[4]

To the defense of the statute of limitations, appellant answers: that the premiums on the policy did not become due until appellee, after the end of the policy period, either furnished or refused to furnish a statement of the payroll remuneration of the employees covered thereby;[5] that appellee delayed the statement for a long time, and the suit was, therefore, brought within the time fixed by the statute.

As to the suit on the assessment judgment, appellant insists: (1) That its specific provisions, purporting to name all the subscribers and the premiums they had paid and the amounts due by each on account thereof, did not have the effect of overcoming the general provisions of the judgment and eliminating appellee therefrom; and (2) that its adjudication that the named defendants were truly representative of all of the class has not been overcome.

We agree with appellant that the agreement for a premium less than that fixed by statute was illegal and that it is ineffective against the suit on the policy for the premiums due under it. We cannot agree, however, that the four-year statute of limitations, Vernon's Ann.Civ.St. Tex. art. 5527, has not run against the suit. It commenced to run when the right to sue arose.[6] Normally the right to sue on a policy of this kind arises at the end of the policy year. The provision for exhibiting to the company the actual amount of the remuneration has no effect upon the accrual of the cause of action. It is merely a covenant that the insured will aid the insurer in arriving at, and liquidating, the amount of the claim, and as such it has no effect upon the operation of the statute of limitations.[7] That this is so is made clear by another provision of the policy: "The company shall be permitted at all reasonable times during the policy period to inspect the plant, works, machinery, and appliances covered by this policy and to examine this company's books at any time during the policy period, and any extension thereof, and within one year after its final

---

[1] Wright v. Wight & Wight, Tex.Civ. App., 229 S.W. 881; Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325; American Nat'l Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397; but see Bowen Motor Coaches v. New York, 5 Cir., 139 F.2d 332.

[2] The policy provides: "Any contract or agreement not written into this form shall be void and have no effect". Art. 4913, Rev.Civ.Stat. of Texas, provides: "Any contract or agreement not written into the application and policy shall be void and of no effect." Brown & Root v. Traders & General Ins. Co., Tex.Civ. App., 135 S.W.2d 534; Commercial Union Assur. Co. v. Preston, 115 Tex. 351, 282 S.W. 563, 45 A.L.R. 1016; Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372; International Trav. Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282; Bowen Motor Coaches v. New York, 5 Cir., 139 F.2d 332; Port Iron & Supply Co. v. Cas. Und., Tex.Civ.App., 118 S.W. 2d 627; Mulkey v. Traders & General Ins. Co., Tex.Civ.App., 93 S.W.2d 582.

[3] English Freight Co. v. Knox, Tex. Civ.App., 180 S.W.2d 633.

[4] Cf. Okeechobee County, Florida v. Nuveen, 5 Cir., 145 F.2d 684.

[5] The policy provided: "At the end of the Policy Period, the actual amount of the remuneration earned by employees during such Period shall be exhibited to the Company, as provided in Condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this Employer shall immediately pay the additional amount to the Company; if less, the Company shall return to this Employer the unearned portion, but in any event the Company shall retain the Minimum Premium stated in said Declarations."

[6] Federal Reserve Bank v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 117 A.L. R. 1160.

[7] United States v. Atlantic Mutual Ins. Co., 298 U.S. 483, 56 S.Ct. 889, 80 L. Ed. 1296; 37 C.J. 976.

expiration, so far as they relate to the remuneration earned by any employee of this employer while this policy was in force". The cases plaintiff cites to the effect that the cause of action does not accrue until the doing of the thing upon which the right to sue is conditioned have no application here. Nothing in the contract prevents the bringing of the suit or requires its bringing to be stayed until the insured has made a statement. We think it clear too that the evidence does not present any issue either of waiver of the statute or of fraud and concealment of the cause of action. Appellant's predecessor knew both when the $100 was paid as premium and when the policy period expired that it had not received the amount of premiums due under the policy. At all times during the policy period, and within one year after, it had the right to ascertain the exact amount due. Whether in this case the cause of action accrued at the time the $100 was paid, or at the end of the policy period, is immaterial, for the suit was brought more than four years after both dates. The judgment denying recovery on the claim for premiums was right, and is affirmed.

As to the suit on the assessment judgment, we agree with appellee throughout. It may not be doubted that class suits may be maintained under proper circumstances whether brought by plaintiffs, or against defendants, as a class,[8] or that "state courts are free to attach such descriptive labels to litigations before them as they may choose, and to attribute to them such consequences as they think appropriate under state constitutions and laws, subject only to the requirements of the Constitution of the United States". Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct.

115, 117, 85 L.Ed. 22, 132 A.L.R. 741. When, however, state court judgments rendered in derogation of the ordinary requirements for a personal hearing are pressed as res judicata, it must be made clearly to appear that the person sought to be bound was in fact a party to the suit and judgment, either personally or by representation, and when it is claimed that they are bound by representation, it must appear that they have been really afforded such notice and opportunity to be heard as are requisite to due process. Hansberry v. Lee, supra. It is not claimed that the appellee was named or served in, or notified of, the pendency of the suit which resulted in the judgment pressed against him. It is claimed merely that he was a party by representation to the suit and judgment. While it is true that the judgment does in places speak in general terms sufficient to include appellee, these general terms are controlled and limited by the specific designation in the judgment, both by name and by calculation, of the persons affected. To hold that defendant was intended to be, and was, a party by representation to this judgment is to do violence to its express terms, and, questions of due process aside, it is clear that the judgment does not bind appellee. If, however, we could agree with appellant that the general terms in the judgment override the specific, appellant would stand no better, for we should still be required to hold that defendant, being differently situated from all the rest, indeed, being in a position adverse to them, could not have been justly and fairly represented by them, and, therefore, could not, consistent with due process, be held bound by the judgment. Hansberry v. Lee, supra. The District Judge was right in denying this claim to recovery. The judgment was right throughout, and it is affirmed.

---

[8] McLean v. Morrow, Tex.Civ.App., 137 S.W.2d 113; Southern Ornamental Iron Works v. Morrow, Tex.Civ.App., 101 S. W.2d 336; Hartford Life Ins. Co. v. IBS, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765; Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673.