CRAWFORD v. McCORKLE.

No. 4104.

Court of Civil Appeals of Texas. El Paso.

June 19, 1941.

Rehearing Denied July 10, 1941.

O. Shelley Evans, of San Antonio, for appellant.

Chas. O. Betts, of Austin, and Cecil D. Redford, of San Antonio, for appellee.

WALTHALL, Justice.

The following statement of the nature and result of the suit is the agreed statement adopted by appellant and appellee. We find it a correct statement, and adopt it as the statement for this Court.

On November 3, 1937, and until March 17, 1939, Lloyds America was an Insurance Association operating under the Lloyds' plan of insurance and was licensed by the Insurance Commission of the State of Texas to transact a general casualty insurance business, including the writing of automobile insurance. At the time this suit was filed Robert A. Hicks was attorney-in-fact for all Underwriters at Lloyds America. On March 17, 1939, Lloyds America was adjudged insolvent by the 53d Judicial District Court, Travis County, Texas, in cause No. 61546, styled The State of Texas, Plaintiff v. Lloyds America et al., Defendants, and Sam McCorkle was appointed Receiver for Lloyds America, and thereafter qualified and gave bond as required by law and was the duly authorized and acting Receiver for Lloyds America at the time this case was tried. Prior to the trial of this case, an order was entered by the court authorizing Sam McCorkle, as Receiver for Lloyds America, to intervene herein and be substituted as party plaintiff in lieu of Robert A. Hicks, attorney-in-fact for Underwriters at Lloyds America.

The defendant, Russell C. Crawford, is an individual and is a resident of San Antonio, Bexar County, Texas, and a citizen of Texas, and operates a business under the trade-name of Crawford Truck Line. The home office of such business is in San Antonio, Texas. The Crawford Truck Line transports property of others for hire in interstate commerce between points in Texas and points in Oklahoma, Missouri, Kansas, Illinois, Indiana, Ohio, Pennsylvania and New York. The Crawford Truck Line holds a common carrier certificate from the Interstate Commerce Commission and is likewise licensed by the States named above.

The Interstate Commerce Commission by virtue of the provisions of the Motor Carrier Act, 49 U.S.C.A. § 315, requires all such motor carriers to maintain certain forms of insurance coverage, and the states through which such a carrier operates, including Texas, also have certain requirements with reference to insurance coverage.

Russell C. Crawford had been insured for public liability and property damage with Lloyds America for the year prior to November 3, 1937, and on such date, at the request of the defendant, Russell C. Crawford, Lloyds America issued its policy No. BT-10426, insuring for public liability and property damage certain trucks owned and operated by Russell C. Crawford. This policy of insurance covered what is commonly called "Public Liability and Property Damage" to the limits of $5,000 for injuries to one person, $50,000 for injuries of more than one person in one accident and $5,000 damage to property of others. The policy was originally issued to cover three trucks and semi-trailers and during the time said policy was in effect there were certain changes in the equipment insured by reason of additions and eliminations which necessitated change in total premium on each occasion there was a change in equipment.

Lloyds America and the insured, Russell C. Crawford, agreed on a premium rate of $409 for each truck per year. This premium rate was arrived at by taking an average of the rates applicable in the states of Texas, Oklahoma, Missouri, Indiana and Ohio, through which it was contemplated by Lloyds America and Russell C. Crawford that the trucks would operate, and this method of arriving at a premium rate was agreed upon between the insurer and the assured. The premium rates applicable in Kansas, Illinois, Pennsylvania and New York were not taken into consideration.

The annual premium rate per truck prescribed by the Insurance Commission of the State of Texas is $218.

Excerpts from the Texas Automobile Manual were admitted in evidence. Such excerpts as were admitted are attached hereto as Exhibit "A".

This policy of insurance was cancelled pro rata by the insurer on August 9, 1939, and under the premium rate agreed upon between insurer and assured a total premium of $1,744.18 was earned under said policy. The defendant paid $1,339.34 of

such amount, leaving an unpaid balance of $404.84. Included in the foregoing amount was a charge of $65.35 for service charges in connection with the installment payment of the policy premium. If the premium rate of $218 per truck prescribed by the Insurance Commission of Texas had been used as a basis of computing the earned premium under this policy of insurance, the defendant has paid all premiums due and has made an over-payment of $395.26.

The original of the policy of insurance issued by Lloyds America was filed with the Railroad Commission of Texas and copies or certificates of the original policy were filed with the Interstate Commerce Commission, and with the proper regulatory boards of the other states through which defendant's trucks operated which required the filing of copies or certificates.

Evidence was submitted and agreed to upon the trial of the above cause before a jury on September 21, 1940, and after both plaintiff and defendant had closed, both plaintiff and defendant moved for an instructed verdict, and the court instructed the jury to return a verdict for the plaintiff and against the defendant for $404.84, the amount sued for. Defendant timely filed his motion for new trial and after hearing same was overruled, to which defendant excepted and gave notice of appeal. Defendant filed appeal bond on October 8, 1940.

Plaintiff and defendant have now agreed that the above and foregoing is a complete statement of the facts developed in evidence upon the trial of this cause, and have agreed to submit this cause on appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District upon the above and foregoing as an agreed statement of facts, and upon the pleadings on file herein.

Appellant presents a number of assignments of error, but suggests that propositions germane to all assignments may be considered under the following: "All automobile insurance premium rates are prescribed and fixed by the Commissioner of Insurance, pursuant to statutory authority, and are to be applied, without variation to all automobile insurance policies written in the State of Texas; and nowhere in the Statutes or rules, regulations and rates adopted and approved by the Commissioner of Insurance is there any authority to charge any rate but the rate fixed and approved by the Commissioner of Insurance; and there is no authority for an insurance company to use either the automobile insurance rates in effect in some other state, or to use a quotient rate produced by taking the average rate of several states, but that the only authority any insurance company writing automobile insurance in Texas has is to use and charge the rates prescribed and approved by the Commissioner of Insurance of the State of Texas."

The facts are stated in the above agreed statement of facts, which we need not repeat here. Plaintiff, Lloyds America, wrote the insurance policy involved here, and as a consideration for the policy charged the defendant a premium rate of $409 for each truck insured and described in the policy. The Commissioner of Insurance, prior to the execution of the policy, had prescribed a premium rate of $218 per truck, unit of equipment. The statement shows that the insurance company promulgated its own premium rate effective by adding up the rates effective in five of the nine states in which the trucks insured were likely to travel and secured thereby an average or quotient rate of $409. The record shows that Russell C. Crawford operating the Crawford Truck Line is a resident of San Antonio, Texas, the head office of his truck line business; the insurance policy in question was purchased, written, executed and delivered in San Antonio, Texas.

The insurance business in Texas is administered by the Board of Insurance Commissioners in accordance with Article 4679c, Acts 1927, 40th Legislature, which Acts created the Board of Insurance Commissioners. The Act reads as follows:

"Art. 4679c. Generally * * * the Casualty Insurance Commissioner shall have general supervision of matters relating to casualty, workmen's compensation, fidelity, guaranty and miscellaneous insurance. The Board shall nevertheless operate as a whole * * *."

"Art. 4682. * * * *Duties of Commissioner.* In addition to the other duties required of the Commissioner, he shall perform duties as follows:

"(1) Shall execute the laws—See that all laws respecting insurance and insurance companies are faithfully executed."

In Scanlan et al. v. Home Ins. Co. et al., 79 S.W.2d 186, at page 189, the Beaumont Court of Civil Appeals said: "The business of insurance is of public concern and therefore subject to strict regulation and control by the state. Hence the rights of parties to contract with respect to insurance are limited by the laws of the state which are

a part of every such contract. And any stipulation in an insurance policy which contravenes the statute is void."

The Court cites Export Ins. Co. v. Axe, Tex.Com.App., 58 S.W.2d 39, 40; Reliance Ins. Co. v. Nichols, Tex.Civ.App., 56 S.W. 2d 479.

In accordance with the above holding the Texas Legislature passed Article 4682b, entitled "Fixing rate of automobile insurance." The portions of the article which seem applicable to the facts of this case read as follows:

" * * * The Commissioner shall have the sole and exclusive power and authority, and it shall be its duty to determine, fix, prescribe, and promulgate just, reasonable and adequate rates of premiums to be charged and collected by all insurers writing any form of insurance on motor vehicles in this State. * * *

"Sec. 2. On and after the filing and effective date of such classification of such risks and rates, no such insurer shall issue or renew any such insurance at premium rates which are greater or less than, or different from, those approved by the Commissioner as just, reasonable and adequate for the risks to which they respectively apply, * * *.

"Sec. 3. To insure the adequacy and the reasonableness of rates the Commissioner may take into consideration experience gathered from a territory sufficiently broad to include the varying conditions of the risks involved and the hazards and liabilities assumed. * * *

"Sec. 5. In addition to the duty of approving classifications and rates, the Commissioner shall prescribe policy forms for each kind of insurance uniform in all respects * * * and no insurer shall thereafter use any other form in writing automobile insurance in this State; * * *."

The quoted article gives "the sole and exclusive power and authority," and makes it the duty of the Commissioner to determine, fix and promulgate just, reasonable and adequate rates of premiums to be charged by insurers writing insurance on motor vehicles in this State, and Section 3 of the quoted article makes it the duty of the Commissioner to include the varying conditions of the risks involved and the hazards and liabilities assumed in this State.

Appellant by an exhibit refers to the preface to the Automobile Insurance Manuals adopted by the Commissioner, and the manuals that were in effect at the time the policy involved here was issued, as follows:

"Important Notice

"These two Texas Automobile Manuals contain the only rules and rates for the writing of Automobile Insurance in Texas that have been approved by the Board of Insurance Commissioners. The rules and rates that follow, and no others, are to be applied from January 25, 1937, without change unless and until the Commission approves other or different Rules and Rates in which event reprint pages will be issued immediately after such Commission official order is publicly released."

"The uniform standard automobile endorsements which appear in an endorsement supplement to the Manuals, and no others, are permissible for attachment to Texas Automobile policies."

In the statement in appellant's brief, adopted by appellee, it is said, "Russell C. Crawford by the acceptance of the policy of insurance after the same had been issued to him by Lloyds America at his request became obligated and bound to pay * * * the premium set out in said policy of insurance and the endorsements attached thereto." The premium set out in the policy is $218 per truck as fixed by the Commission, and the rate promulgated by the Insurance Company as stated above.

It is admitted that Crawford paid to the Insurance Company $1,339 during the time the policy was in effect, and that the Insurance Company claims a balance due on the premium rate fixed by the Company and not the Texas rate, and the Company in the suit claims a balance due it of $404.84, for which it sues.

The case of Daniel v. Tyrrell & Garth Investment Co., 127 Tex. 213, 93 S.W.2d 372, came before the Supreme Court, and without commenting at length on what is there said, the Court, Judge Critz writing the opinion, at much length on the construction to be given the statute, held in effect that the powers conferred by the statute is business of public interest, a rate making business, and that contracts must conform thereto.

The states through which appellant's trucks were to run had promulgated rates for trucks applicable in such states in interstate commerce, and appellee's suggestion is: What is to prevent the Insurance

Department of each state through which the assured operates his trucks claiming for itself the same exclusive authority and power? And appellee assumes that appellant had purchased a policy of insurance at the Texas rate and then sought to file the policy in Oklahoma or some other of the states upon making application for a permit to operate as a carrier for hire upon the highways of such state, and it developed (as was true in this case) that the rate in such other state was in excess of the Texas rate. If the contention be true, then the proper authority of such other state could refuse to file such policy and issue a permit to such carrier. Under such construction of the power of the Commissioner of Insurance the appellant cannot purchase insurance in Texas at a rate in excess of the Texas rate. Then the assumption of authority of a state regulatory body over a vital incident to interstate commerce has interfered with and prevented interstate commerce between the several states. The answer to this is that the state would not have such power. The Federal Government has prescribed the coverage of the policy exacted. When complied with, the right to operate in a state covered in its permit is consummate. University Overland Express v. Alsop (Public Utilities Commission), 122 Conn. 275, 189 A. 458.

Appellee contends that Interstate Commerce Commission not having assumed authority over rates of carriers engaged in interstate commerce, and it being impossible for a carrier to meet the requirements of more than one state in which the rate differs, it naturally follows that the rate to be charged by an insurer and paid by an assured engaged in interstate commerce is a matter of private concern between the parties; and further contends that the powers granted by the Legislature to the Commissioner of Insurance are not as broad as contended by appellant in this case, and points out that the Texas rate was filed with the Railroad Commission, the Interstate Commerce Commission and the proper regulatory authorities of other states and remained on file for more than nine months, and that it is to be presumed was approved as written before filed. Appellee contends that the rate agreed and acted upon by the parties was a fair rate, and the amount due should be paid.

So far as we have been able to discover we have no interstate commerce rate; we have no special rate that applies to the facts of this case. The rate promulgated is broad enough to cover interstate traffic.

The question here is: Can appellee sue on the policy and recover as was done? We think not, and have concluded to reverse the case and render judgment for appellant, and it is so ordered.