**BOWEN MOTOR COACHES, Inc., et al. v. NEW YORK CASUALTY CO.**

No. 10798.

Circuit Court of Appeals, Fifth Circuit.

Dec. 16, 1943.

Rehearing Denied Feb. 7, 1944.

Carl B. Callaway, of Dallas, Tex., for appellants.

Ralph W. Malone, of Dallas, Tex., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, referred to herein as the insured, were common carriers of passengers by busses operating in Texas. They were insured against liability for personal injuries and property damage under a policy issued by appellee, which took effect August 30, 1937, and was to have run for a year, but was cancelled May 30, 1938, partly because of difficulties and misunderstandings about the payment of premiums. This suit is to collect a balance of premiums. An auditor was appointed over objection who reported what was due under two methods of computation, the results agreeing within a few dollars. A jury was waived, and the judge having heard evidence in connection with the auditor's report made full findings of fact and conclusions of law and gave judgment for plaintiff for $10,052 and interest. The insured appeal.

■ Insurance has, since German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S. Ct. 612, 58 L.Ed. 1011, L.R.A.1915C, 1189, been recognized as a business so affected with a public interest as to be regulable by law. In Texas, by a statute enacted in 1927, and amended and amplified by another taking effect on May 15, 1937, a Board of Insurance Commissioners was established, having among others the power and duty "to determine, fix, prescribe and promulgate just, reasonable and adequate rates of premiums to be charged and collected by all insurers writing any form of insurance on motor vehicles in this State", and to "prescribe policy forms for each kind of insurance * * * and no insurer shall thereafter use any other form in writing automobile insurance in this State * * * and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this Act". Special favors and discriminations are forbidden; and power is given the Commissioners to make and enforce reasonable rules and regulations to carry out the Act. Vernon's Civil Statutes of Texas, Art. 4682b. It follows that the contract of insurance must exist in writing on forms fixed by the Commissioners, and that any provisions contravening the statute or valid regulations are void. Daniel v. Tyrrell and Garth Ins. Co., 127 Tex. 213, 93 S.W. 2d 372; Scanlan v. Home Ins. Co., Tex. Civ.App., 79 S.W.2d 186; Crawford v. McCorkle, Tex.Civ.App., 153 S.W.2d 334.

■ In January, 1937, the Commissioners had promulgated the Texas Automobile Casualty Manual, covering the kinds and forms and premiums and practices in the sort of insurance here involved. At that date they had authority to approve rates filed by the insurers, but not to fix them originally, as provided in the Act of 1937. The Manual continued to be used by the Commissioners after the effective date of the Act of 1937, and was formally amended several times before and during the currency of the policy in controversy. We are of opinion that the Manual was not revoked by the passage of the Act of 1937, that the previously approved rates stood until new ones should be fixed, and that the Manual was re-adopted by the formal amendment of it.

With the legal background thus settled the case is simplified. The oral agreements of the parties, their understandings, and the disputed authority of the insurance broker who acted in some things for both parties, all become of little importance. A written policy was concededly issued and altered by several riders made effective as of the date of the policy, so that at last a document was reached satisfactory to the parties, and to the Commissioners, represented by one of them designated in the statute as the Casualty Commissioner. The problem is to construe this policy and apply to it the regulations of the Manual.

The Manual is testified by those familiar with it to authorize insurance of each of a common carrier's "regular" busses for a year for a fixed annual premium depending on the capacity of the bus and the territory in which it is to operate. It authorizes a coverage, in addition to the regular busses, of one-third as many to be used as "overload" busses when necessary, at one-half

the regular rates; and one-third as many more to be used as "substitutes", at no additional premium. The policy as originally written was clearly on this plan, containing a list identifying each regular bus with the annual rate on each, each overload bus with its one-half premium, and each substitute bus with no premium stated. More than seventy in all were listed. Breakdowns, repairs or mere convenience, as well as more permanent dispositions, required many and frequent changes in the lists, all of which had to be filed with the Commissioners. To avoid this a rider was attached, effective retroactively, under which monthly settlements and reports of premiums might be made, on a basis of paying not 1/12 of the annual premium on each bus, but 1/365 of the annual premium for each day the bus was in fact used. It seems to be established that the Manual permits this. The dispute really is as to what if any premium is due on this plan when a bus listed as an overload or a substitute is run. The insured and the broker who got up the premium reports each month understood that the half rate for overloads and no charge for substitutes would apply under the new plan, and this seems at first to have been acquiesced in by the insurer though a contention was raised that too many busses were being reported by insured as overloads and substitutes. To facilitate calculations, a flat deduction of thirty percent from the full premiums for each bus used, all treated as regulars, was resorted to as a practical equivalent, and the reports for the last five or six months were thus made out. The Casualty Commissioner did not agree that the reports were proper, and as above stated the insurer cancelled the policy. Two months later the insurer asked payment of $238.17 as the balance due on premiums, and it was paid by insured. Thereafter a demand was made for about $15,000 additional, based on a calculation which repudiated the thirty percent flat deduction made as the equivalent of credits for overloads and substitutes, and denying all such credits. This demand was refused, and a suit for the balance claimed was brought.

It was necessary to examine the insured's business records for nine months to see how and why each bus was used each day, in order to ascertain what premium was due in respect of it; the court on the insurer's motion appointed an auditor for that purpose, requiring that he report the premiums payable both under the original basis of the policy and the basis of 1/365 of the annual premium on each bus for each day used. The auditor did this very elaborately, finding that on the original basis, by which the busses were classed as regular, overload and substitute, the proper premium balance unpaid was $10,032.36. Under the 1/365 of annual premium basis for each day used, the balance was $10,035.98, with no credits allowable for overloads or substitutes.

■■ Error is specified in appointing the auditor, and in charging his fee of $1,640 as costs against appellants. We think it quite apparent that the appellee, as plaintiff having the burden of proof, and having to show error and mistake in the account settled made by its claim for a balance of $238.17 which was paid, needed an auditor to ascertain and prove what was due. The court also needed one to check and state the records of the insured from which alone the facts could be obtained. An examination of the report shows the complexity of the task, and that the case could not otherwise have been handled. Though a law case, accounts were so far involved that an auditor could be appointed by the court under Federal Rule of Civil Procedure, rule 53, 28 U.S.C.A. following section 723c. According to that rule the auditor's compensation, fixed by the court, may be charged upon such of the parties as the court may direct. No objection is made to the amount allowed. The plaintiff used the auditor as its witness to prove its case, and could not have proceeded unless it had itself had the books audited. The insured was no more to blame than the insurer for the confusion into which the business fell. We think the expense of the audit should be divided between the parties.

■ We have mentioned the account stated and settled between the parties as a matter bearing on the burden of proof. We do not think it can be given effect as a bar by accord and satisfaction or estoppel. The rates to be paid for this insurance had been fixed by public authority; they and no others can be charged, and all discrimination is forbidden by statute. The provisions of law cannot be overridden by any act or agreement of the parties, either before or after the currency of the policy. The situation is much like that where railroad rates have been fixed by public authority and the use of other rates

forbidden. Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372; Brown & Root, Inc. v. Traders & General Ins. Co., Tex.Civ.App., 135 S.W.2d 534; Crawford v. McCorkle, Tex.Civ.App., 153 S.W. 2d 334.

 But the unlawfulness of the accord, or of some of the understandings about the rates while the policy was running does not, as is contended, make applicable the principle that when parties are in pari delicto the courts will leave them without any relief. There was here no corrupt agreement to violate the law. No crime was to be committed. The parties were trying to act in accordance with the statute. If the right premiums be not paid or agreed to be paid the intention of the statute is not to invalidate the insurance or permit improper premium settlements to stand, but that the policy shall be conformed to the law, which is considered as written into it, and that those premiums shall be paid which ought to be paid. The court would fail in its duty if it refused to ascertain and enforce the lawful premiums due. American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397; Herminghausen v. Adams Express Co., 167 Iowa 230, 149 N.W. 234; Meridian Life Ins. Co. v. Dean, 182 Ala. 127, 62 So. 90. Compare McLean v. York Oil Field Supply Co., 5 Cir., 138 F. 2d 804.

 On the specified car basis, the auditor allowed credits for substituted busses, but no overloads, since the records did not show that any busses were in fact set apart and used as overloads. The judge agreed. We think the Manual intends, when this basis is used, to confine the half rate premium to busses so set apart and used. No reason is shown why the results reached on that basis are not correct.

 On the basis of paying 1/365 of the annual premium on each bus for each day it was used, there does not appear to be any reason for allowing a bus which is carrying overflow passengers a one-half rate, or letting it be operated free because it is substituting a regular bus which is not in use and so not paying any premium for that trip. The Manual is not in our record, though introduced in evidence, and we have only some extracts from it. The auditor found that it does not contemplate these special allowances when this rate basis is used, and witnesses from the Board of Insurance Commissioners testify that this is true. They say that the pro-

rata rate basis nowhere in Texas is other than a day's premium on each car used for every day used. The judge so found. We have no reason to disagree. It seems to be true that the insured, believing there would be no extra cost in substituting busses on a run of less than a day, often did so, thus incurring premiums on two busses when only one might have been used. That mistake, however, could not change the rates as established by the Commissioners.

We do not find any clear provision in the policy riders specifying that the premium basis is to be changed from the specified car basis to the prorata basis, though the parties and the Casualty Commissioner evidently thought so, and the judge adopted that view. The results of each basis are so nearly identical that it is unnecessary to decide between them.

We modify the judgment so as to provide that each party pay one-half the auditor's fee of $1,640, and as so modified we affirm it. No costs of appeal are awarded to appellant.

Modified and affirmed.