**CANAL INSURANCE COMPANY,**
Appellant,

v.

**J. C. THORNTON and James S. Given,**
d/b/a Kemp Coldwell & Company, Appellees.

No. 18205.

United States Court of Appeals
Fifth Circuit.

May 31, 1960.

Cameron, Circuit Judge, dissented.

Schuyler B. Marshall, El Paso, Tex., Scott, Hulse, Marshall & Feuille, El Paso, Tex., of counsel, for appellant.

Frank Owen, III, El Paso, Tex., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment in favor of an insurance broker, found by the court to be the agent for the insurance company, for reimbursement from his principal for payments made to an insured which resulted in the insured's obtaining the benefit of the insurance protection at a rate lower than the legal rate in the State of Texas.

Appellees, under circumstances in which they acted for both the insured bus line and the insurance company, obtained for the bus company a public liability insurance policy from Canal, dated November 15, 1955, on the quotation by Ben High, its General Agent, of a premium rate of $4.80 per $100 of gross income. This premium rate was incorrect under the manual issued by the Texas Insurance Commission, but it was not actually ascertained by any of the parties to the transaction to be incorrect until after the policy had been cancelled

on June 25, 1956, and after appellees had returned the deposit of $2,483, the amount here sued for, to the bus line, as a return of an unearned premium. The correct premium was ascertained following an audit by the Insurance Commission of many premium rates quoted by the same Ben High and after ascertainment that many of them had been incorrect (most of them too high, resulting in refunds by Canal to its policyholders in Texas.)

After receiving the brokers' copy of the notice of cancellation sent by the insurance company to the bus company, appellees, who held a credit balance on their books in favor of this insured, credited the insured's account with the sum of $2,483. Thereafter, in October, 1956, it was ascertained that the rate should have been $5.90 per $100 of gross receipts and the insurance company was ordered by the Board of Insurance Commissioners to file an endorsement to this particular policy showing the corrected premium rate. The endorsement was issued "as of" November 15, 1955, the effective date of the policy.

The brokers demanded of appellee reimbursement for the $2,483 which they had advanced to the insured. This was declined and the present suit followed.

Appellees base their claim for reimbursement on the fact that the Notice of Cancellation sent by the insurance company to the insured contained the statement, "The return premium, if any due you, will be refunded on demand"; and on what they alleged was the common practice of brokers to make refunds of unearned premiums to the insured upon cancellation. The trial court based its finding that appellees were entitled to recover precisely on this theory. The court stated in its findings of fact, "Plaintiffs in refunding the amount of the deposit premium due under the policy as cancelled and acting upon the Notice of Cancellation marked Agent's Copy, following the usual custom and common practice in handling such refunds after cancellation."

In its conclusions of law the court stated, "This contractual relationship of agency developed a common practice and usual procedure to which Plaintiffs' action conformed, and which is controlling herein." It is not clear whether the court referred to a common practice between the insurance company and this broker or to a custom of the trade generally.

With full deference to the trial court, whose findings of fact must be accepted unless found to be clearly erroneous, we deem it necessary to point out that there was no basis on the record for the trial court to find either (1) that the course of dealing between Canal Insurance Company and Kemp, Coldwell & Company made such action either a custom or common practice, thus warranting the inference that it had been authorized or ratified by the insurance company or (2) that there was a common practice in the trade so universally recognized as to become a part of every contract of agency such as would warrant the finding that the Canal Insurance Company's contract authorized such payment on its behalf by the brokers. The testimony is meager but plain on this issue. The appellee partner, Thornton, testified as to the particular contract as follows:

"Q. In regard to cancellations and such as that, what is the procedure, what is the practice? A. Well, that is the only cancellation that we have ever had with Canal, but all the other companies—the normal procedure is what you want to know about?"

Upon objection by appellant, the court then ruled, "I am not sure it would be binding upon this defendant what the practice was of other companies. The objection will be sustained." Thus, it is clear that no common practice or usual procedure existed as between the agent and the company.

If, on the other hand, the theory was that there was a common practice in the trade that would be binding on all insurance companies in all agency contracts,

it is equally clear that there was no evidence to this effect. The testimony on this point is as follows:

"Q. Now, did you make any payment by way of return premium payments on this policy to El Paso-Ysleta Bus Lines? A. We allowed them a credit of $2,483.00 on their general ledger account.

"Q. And you gave them full credit for that? A. That is correct.

"Q. Is that the usual and customary manner in which you handle such refunds? A. That is correct. *We do it with all our companies and our clients*, both. I mean, if they bring a policy to us to be cancelled, we figure out the cancellation and we will give them our check right there from our office immediately. We, in turn, then will put it on the Accounts Payable and Accounts Current to the companies, which is a matter of transaction, as far as bookkeeping is concerned, but we have disbursed our cash, our check to the client already.

"Q. And to the companies, you are referring to companies such as Canal Insurance Company? A. Yes, we represent thirty to thirty-five different insurance companies." (Emphasis added.)

■ Whatever practice Kemp, Coldwell & Company may have followed with respect to thirty-five different insurance companies they represented cannot be taken as proof of a universal custom in the trade which would be binding on Canal Insurance Company. Of course, the theory under which a specific contract between two parties is expanded or modified by custom is that a certain practice or procedure is so universally followed by the parties engaged in the particular business or industry that all are presumed to contract with reference to that custom. The proof here falls far short of what would be necessary to prove universal custom.

■ Moreover, even if some universal custom had been proved, all that was said to be the custom was the custom of the broker voluntarily to advance the amount due to the insured for unearned premiums when a cancellation took place. There was not even an effort to prove that such custom comprehended the principle that when such payment was made by the broker there was a complete accord and satisfaction as between all the parties, which could not be reopened even upon a showing that a legally insufficient premium had been collected. Thus the custom sought to be proved did not even touch the real issue here before the Court. The issue here is not whether Kemp, Coldwell & Company had the right to make a refund to the bus company on an apparent showing that a refund was due. It was rather whether, having made such refund and it later developed that the refund was not legally due because the rate for the coverage was not in accord with the legally published rates, there was a custom in the trade that the insurance company would be bound to reimburse the broker rather than for the broker to recoup the payment from the insured who was not legally entitled to retain it. There was no proof of the existence of any such custom, even as between appellees and their thirty or thirty-five companies.

Even beyond this, however, we think a basic principle inherent in the regulation of insurance premiums by state regulatory agencies would prevent the result which follows from the decision of the trial court. That principle is clearly stated in a decision of this Court in Bowen Motor Coaches v. New York Casualty Company, 5 Cir., 139 F.2d 332, 334:

"The rates to be paid for this insurance had been fixed by public authority; they and no others can be charged, and all discrimination is forbidden by statute. The provisions of law cannot be overridden by any act or agreement of the parties, either before or after the currency of the policy. The situation is much

like that where railroad rates have been fixed by public authority and the use of other rates forbidden."

The Court stated further at page 335:

"If the right premiums be not paid or agreed to be paid the intention of the statute is not to invalidate the insurance or permit improper premium settlements to stand, but that the policy shall be conformed to the law, which is considered as written into it, and that those premiums shall be paid which ought to be paid. The court would fail in its duty if it refused to ascertain and enforce the lawful premiums due."

■ Appellees, being licensed insurance brokers under the Texas statutes, were, of course, as much charged with notice as to the correct premium to be charged as an insured would be. An insured, who is a layman in the field of insurance, is, as was held by us in the Bowen case, legally obligated to pay the correct premium even though the policy has expired. This being the law in Texas so much clearer must it be that the broker, whose obligation to sustain the rate structure as well as all other insurance statutes and regulations touching on the business contracted by him is imposed by statute, must be charged with full information as to the rate to be charged and the obligation of the insured to pay it and thus of the impropriety of permitting an unlawful refund to be left in the hands of an insured.

Nothing, of course, is added to the appellees' contention by reason of the notice that any refund was to be returned upon demand if any was due. The condition, "if any due you," is the key to this statement. There is no obligation to pay any refund if not due. Moreover, any agreement to make a refund if not legally due would not be legally binding. This, too, was, under the law, known to appellees.

The principle stated in the Bowen case was repeated by this Court in Battles v. Braniff Airways, Inc., 5 Cir., 146 F.2d 336, where on page 338 we said:

"We agree with appellant that the agreement for a premium less than that fixed by statute was illegal and that it is ineffective against the suit on the policy for the premiums due under it."

■ Finally, we are constrained to disagree with deference to the conclusion of the trial court that in applying the doctrine *in pari delicto* it would further the public policy of Texas for appellees to be permitted to recover the amount paid by them to the insured than to deny this relief. In point of fact, the only public policy here involved is the Texas policy, enforced by criminal sanctions, prohibiting the charging of less than the premium for insurance coverage. The effect of the judgment of the trial court is to permit the party which, however innocently, accomplished the giving of insurance protection to the company at less than legal rate to obtain reimbursement from the insurance company of the sum which they paid to achieve this illegal insurance, and to leave the insurance company in the position of having contributed the amount by which the insurer enjoyed less than the legal charge for coverage.

We conclude that the judgment, based on such admitted state of facts, cannot stand. The judgment is reversed and is here rendered for appellant.

CAMERON, Circuit Judge.
I dissent.